IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARVIN WISE,
*Petitioner*,

v.                                                    Criminal No. ELH-18-72

UNITED STATES OF AMERICA,
*Respondent*.

## MEMORANDUM OPINION

This Memorandum Opinion resolves a "Motion For Order Granting Compassionate Release And Modifying Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)," filed by counsel on behalf of defendant Marvin Wise. ECF 172 (the "Motion"). It is supported by one exhibit. ECF 172-1. In the Motion, Wise asks the Court to "reduce his term of incarceration to time served and to require him to serve an additional period of time on home confinement." ECF 172 at 2. The government opposes Wise's Motion (ECF 180) and has submitted nine exhibits. ECF 172-1 to ECF 172-8; ECF 182 (Sealed). Wise has replied. ECF 184. And, the government supplemented its response, docketed at ECF 185.

The Motion is fully briefed and no hearing is necessary to resolve it. For the reasons that follow, I shall grant the Motion.

### I.      Background

On February 7, 2018, a federal grand jury returned an Indictment (ECF 1) charging Wise and three codefendants[1] with crimes relating to the operation of a drug trafficking organization in northwest Baltimore between May 2017 and February 2018. In particular, Wise was charged in

---

[1] Wise was indicted along with Healin Brown, Giorgio Frederick, and Anthony Moore. Although the Indictment contained two counts, Wise was named only in Count One.

Count One with conspiracy to distribute and possess with intent to distribute 100 grams or more of a substance containing a detectable amount of heroin, as well as cocaine and marihuana, in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2.  On April 26, 2019, the government charged Wise with the same offense in a Superseding Information.  ECF 133.  But, the offense was limited to heroin, and no drug quantity was specified.

Wise entered into a plea agreement with the government (ECF 135) and, on April 29, 2019, he tendered a plea of guilty to the Superseding Information, charging conspiracy to distribute heroin.  ECF 137.  According to the Factual Stipulation, ECF 135, ¶ 6, Wise facilitated a drug transaction in November 2017 between a member of the conspiracy and an undercover agent.  *Id*. Based on surveillance, phone analysis, and controlled purchases, defendant agreed that the evidence would establish that he conspired to distribute over 100 grams of heroin.  *Id.*  Wise faced a maximum term of imprisonment of 20 years.  *Id.* ¶ 3.

Of relevance here, the plea agreement stipulated that Wise qualified as a Career Offender, pursuant to the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G"), § 4B1.1(a), because his instant crime was a "controlled substance offense" and he had two prior felony convictions for controlled substance offenses.  *Id.* ¶ 7(b); *see* U.S.S.G. § 4B1.1(a).  Thus, defendant stipulated to a base offense level of 32.  ECF 137, ¶ 7(c).  Under U.S.S.G. § 3E1.1, Wise was entitled to a three-level reduction of his offense level for acceptance of responsibility, resulting in an offense level of 29.  *Id.* ¶¶ 7-8.

The Presentence Investigation Report ("PSR," ECF 150) similarly deemed Wise a Career Offender under U.S.S.G. § 4B1.1.  *Id.* ¶ 16.

In the absence of the Career Offender designation, Wise's base offense level would have been 24.  Wise's status as a Career Offender resulted in an eight-level upward adjustment, from

an offense level of 24 to 32. *Id.* ¶ 22. Given the three-level reduction for acceptance of responsibility, the PSR set Wise's final offense level at 29. *Id.* ¶ 25.

Defendant's designation as a Career Offender also affected his criminal history category. Were Wise not a Career Offender, he would have had a Criminal History Category of V. ECF 150, ¶ 41. But, because of his Career Offender status, he had a Criminal History Category of VI. *Id.*; *see* U.S.S.G. § 4B1.1(b).

Sentencing was held on July 23, 2019. ECF 155. The Court, consistent with the PSR, found that Wise qualified as a Career Offender under U.S.S.G. § 4B1.1(a). ECF 174 (Sentencing Tr.) at 7. Accordingly, based on a total offense level of 29 and criminal history category VI, the Court determined that the Guidelines called for a sentence ranging from 151 to 188 months' imprisonment. *Id.*

The parties agree that, if Wise were not a Career Offender, his final offense level would have been 17. And, with a Criminal History Category of V, his Guidelines would have been 51 to 63 months.

Both sides recommended a term of imprisonment below the Guidelines range. The government argued that a sentence of 72 months' imprisonment was appropriate in light of Wise's personal circumstances: he was 58-years-old, participated in the drug conspiracy "to fuel his own addiction," lacked a history of violent crime, never served a significant period of incarceration, and was recently diagnosed with kidney cancer. *Id.* at 10-11. By contrast, Wise sought a sentence of 48 months' imprisonment. *See id.* at 17.

Applying the sentencing factors set forth in 18 U.S.C. § 3553(a), I "agree[d] with the government, that in the context of this case, the career offender designation frankly would be draconian and, therefore, that is not influencing my sentence." *Id.* at 18. Further, I acknowledged

3

that Wise had "significant health issues" and a "long history of drug abuse." *Id.* at 20. And, I observed that, despite Wise's long history of criminal convictions in Maryland courts, he had never served a lengthy period of incarceration. However, I also noted that Wise's role in the conspiracy and his Guidelines calculations were comparable to one of his codefendants, who had received a sentence of 72 months. *Id.* at 24. Therefore, I sentenced Wise to a period of incarceration of 72 months, followed by three years of supervised release. *Id.* at 25; *see also* ECF 156 (Judgment). Wise received credit for time served from August 31, 2018 to September 6, 2018, and from May 20, 2019, to July 23, 2019. *Id.*

Defendant is currently serving his sentence at Allenwood Low FCI in Allenwood, Pennsylvania. It is a low security correctional institution maintained by the Bureau of Prisons ("BOP"). His projected release date, according to the BOP, is June 22, 2024, just over four years away.

Wise, who will turn 60 in July, suffers from Type 2 diabetes, heart disease, hypertension, chronic kidney disease, asthma, arthritis, and gout. While on pretrial release in this case, he was diagnosed with kidney cancer and underwent surgery to remove one of his kidneys. *See* ECF 182. Wise has also suffered three heart attacks, including one that occurred after sentencing in 2019, while in transit to BOP. According to Wise's counsel, he uses an inhaler for his asthma and takes seven medicines on a daily basis. *See* ECF 172 at 20 n.22. And, Wise's counsel avers that he needs blood work every two months and semi-annual chest x-rays and CT scans. *Id.* at 20.

On March 25, 2020, Wise requested compassionate release from the Warden of Allenwood Low FCI. His request was denied on April 15, 2020. ECF 172-1. Thereafter, on March 27, 2020, Wise, who was then self-represented, moved for a sentence reduction. ECF 165. Then, through counsel, he filed the Motion at issue. ECF 172.

Additional facts are included, *infra*.

## I.   Discussion

### A.  Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed."

18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United*

*States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395

(4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v.*

*United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is

"expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i)

provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part

of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon

a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).

Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*,

*e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v.*

*Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  motion

for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  BOP rarely filed motions

on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on*

*Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66

(2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on

average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism

when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.

It is undisputed that Wise has properly exhausted his administrative remedies. *See* ECF 180 at 11 n.3. Wise petitioned the Warden of Allenwood FCI for compassionate release, and his request was denied on April 5, 2020. ECF 172-1. Therefore, the Motion is properly before this Court.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Wise must demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence and that the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction. Defendant, as the movant, bears the heavy burden of establishing that he is entitled to a sentence reduction under § 3582. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

6

Before embarking on this two-step inquiry, however, I address the parties' dispute concerning the import of the Sentencing Commission's commentary in applying § 3582. The government maintains that the Commission's commentary is "binding on the Court." ECF 180 at 8. The government has a textual hook for its argument: the FSA left untouched § 3582(c)(1)(A)'s directive that "a reduction [be] consistent with the applicable policy statements issued by the Sentencing Commission." Thus, according to the government, the Court must defer to the Commission as to what qualifies as an "extraordinary and compelling" reason to modify a sentence.

The applicable policy statement for compassionate release is found at U.S.S.G. § 1B1.13, which states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

The commentary to U.S.S.G. § 1B1.13 enumerates four scenarios that warrant compassionate release: (1) terminal illness or a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care"; (2) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence; or

(3) the defendant is the only available caregiver of a minor child.  U.S.S.G. § 1B1.13 cmt. n.1(A)-(C).  The commentary also contains a catch-all category, providing for release based on "other reasons," as determined by the Director of BOP.  *Id.* § 1B1.13 cmt. n.1(D).

In contrast, Wise contends that "courts are no longer constrained to grant compassionate release only in those circumstances enumerated" by the Commission.  ECF 184 at 1.  Relying on a chorus of recent decisions, defendant posits that the FSA amended § 3582(c)(1)(A)(i) to vest courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence.  *See id.* at 3-6.

I agree with Wise.  It is true that § 3582 provides that a sentencing reduction must be "consistent" with the Commission's policy statements.  And, some courts have concluded that although the FSA expanded access to compassionate release, it did not enlarge its scope.  *See United States v. Ebbers*, ___ F. Supp. 3d ___, 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019); *United States v. Lynn*, No. CR 89-72, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019).

However, this appears to be the minority view.  The growing consensus among judges in this district and elsewhere is that § 1B1.13 is not a straightjacket.  *See United States v. Scott*, ___ F. Supp. 3d ___, 2020 WL 2508894, at *8 (E.D. Wis. May 15, 2020) (describing this as the "majority position"); *see, e.g.*, *United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020); *United States v. Decatur*, ___ F. Supp. 3d ___, 2020 WL 1676219, at *2-3 (D. Md. Apr. 6, 2020); *United States v. Redd*, ___ F. Supp. 3d ___, 2020 WL 1248493, at *8 & n.18 (E.D. Va. Mar. 16, 2020); *United States v. Lisi*, ___ F. Supp. 3d ___, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020); *see* ECF 180 at 3-6 (collecting cases).  Indeed, good reasons exist to

doubt that the policy statement is binding.

For starters, U.S.S.G. § 1B1.13 is outdated in light of the FSA.  It presupposes that § 3582 review is available only upon motion by the BOP, which is no longer correct.  *See* U.S.S.G. § 1B1.13 cmt. n.4.  The commentary also delegates authority to the BOP to identify circumstances that warrant compassionate release.  *See id.* cmt. n.1(D).[2]  Moreover, cabining the application of § 3582 to the scenarios set forth in the commentary accompanying U.S.S.G. § 1B1.13 is contrary to the FSA, which Congress  enacted to remove the BOP as the gatekeeper of compassionate release. *See* 164 Cong. Rec. S7314-02 (Dec. 5, 2018) (statement by Sen. Cardin) (noting that the FSA was intended to "expand[] compassionate release").  But, where a federal statute and Guidelines commentary conflict, the former always prevails.  *See Stinson v. United States*, 508 U.S. 36, 40-42 (1993); *United States v. Allen*, 909 F.3d 671, 675 (4th Cir. 2018).[3]

Accordingly, although the Commission's commentary is instructive, the Court retains independent discretion to determine whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i).

## B.  Analysis

---

[2] U.S.S.G. § 1B1.13 was last substantively amended on November 1, 2016.  As many courts have observed, the failure to harmonize § 1B1.13 following the enactment of the FSA is best explained by the fact that the Commission is two voting commissioners shy of the necessary four to amend the Guidelines. *See About the Commissioners*, U.S. SENTENCING COMM'N, https://bit.ly/3fSLLcr  (last accessed May 15, 2020); *see, e.g*., *United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019).

[3] Although *Stinson* was decided before *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court held that the Guidelines are only advisory, not mandatory, the Fourth Circuit has continued to cite *Stinson* regarding the commentary's binding effect on the Guidelines. *See United States v. Shell*, 789 F.3d 335, 340 (4th Cir. 2015) (applying *Stinson*).

As to *Booker*, it does not resolve whether U.S.S.G. § 1.B1.13 is binding on the Court.  *See Dillon v. United States*, 560 U.S. 817, 829-30 (2010) (holding that Guidelines policy statement was binding on the interpretation of 18 U.S.C. § 3582(c)(2) and that *Booker* was inapplicable due to the fundamental difference between sentencing and sentence-modification proceedings).

As applied to Wise, the COVID-19 virus presents "extraordinary and compelling reasons" that warrant a reduction of his sentence.[4]

The COVID-19 pandemic is nothing short of "extraordinary." *See Extraordinary*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "extraordinary" as "[b]eyond what is usual, customary, regular, or common"). It is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The virus is highly contagious; it spreads "easily and sustainably" from person-to-person. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTR. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Asymptomatic carriers can spread COVID-19, and scientists estimate that the average infected person transmits the disease to between two and four others. *See* Jenny Gross & Mariel Padilla, *From Flattening the Curve to Pandemic: A Coronavirus Glossary*, N.Y. TIMES (Mar. 18, 2020), https://nyti.ms/3aW4yAI.

The disease is also highly fatal. As of May 15, 2020, the coronavirus has infected over 1.4 million Americans and caused over 86,000 deaths. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed May 15, 2020). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), asthma, chronic kidney disease, heart disease, and diabetes *each* increase the risk of complications from COVID-19. *See Coronavirus*

---

[4] After the drafting of this opinion was largely completed, the government amended its response. *See* ECF 185. In that filing, the government advised that the Department of Justice had recently "taken the position that inmates who suffer from a condition identified . . . as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition, present an 'extraordinary and compelling reason' to be considered for compassionate release." *Id.* at 1. Therefore, in light of Wise's various health issues, the government now concedes that he is eligible for compassionate release, although it still opposes his release. *Id.*

*Disease 2019 (COVID-19), At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

The CDC has implored citizens to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 15, 2020). And, our elected leaders took unprecedent action, ordering businesses to close and residents to shelter at home in order to "flatten the curve." *See Sarah Mervosh et al*., *See Which States Are Reopening and Which Are Still Shut Down*, N.Y. TIMES (May 15, 2020), https://nyti.ms/2Z6Fm7F. As a result of COVID-19, life as we know it came to a halt for a significant period. In some places, businesses are beginning to reopen, but they are not in full swing. And, in many places, schools, businesses, and courts remain largely shuttered.

Social distancing is particularly difficult in the penal setting. Therefore, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See* Letter from Johns Hopkins Faculty to Gov. Hogan (Mar. 25, 2020) (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Banks v. Booth*, No. 20-849 (CKK), 2020 WL 1914896 (D.D.C. Apr. 19, 2020) (finding that jail's inadequate measures to counteract the COVID-19 pandemic likely violated detainees' constitutional rights). Recognizing the unique risks posed to inmates and employees, Attorney General Barr directed the BOP on May 26, 2020, to prioritize home confinement for vulnerable inmates. *See* Memorandum from Attorney Gen. to Dir. of BOP, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020). On April 3, 2020, Attorney General Barr again pressed the BOP to expand the use of home confinement upon

finding that "emergency conditions are materially affecting the functioning of the Bureau of Prisons." *See* Memorandum from Attorney Gen. to Dir. of BOP, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020). And, just last week, the Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release. *See* ECF 185.

To be sure, the BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. *See* ECF 180 at 17-19 (detailing measures that BOP has implemented at Allenwood). Fortunately, as of May 15, 2020, there were no reported infections among the inmates at Allenwood FCI. *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1. Yet, it would be pollyannaish to believe that Allenwood FCI will escape this pandemic unscathed. As of May 15, 2020, the virus has penetrated 53 BOP facilities, killing 55 inmates and infecting more than 2,000. *See id.* In addition, 250 BOP staff have fallen ill, including two at Allenwod FCI. *See id.* In short, COVID-19 presents a significant threat to Wise and other inmates at Allenwood FCI who have serious underlying health issues.

Wise's poor health and age, which make him especially susceptible to COVID-19, provide a compelling basis to modify his sentence. *See Compelling Need*, BLACK'S LAW DICTIONARY (defining "compelling need" as a "need so great that irreparable harm or injustice would result if it is not met"). Wise suffers from *all* of the maladies identified by the CDC as conditions that increase the risk of dire complications due to COVID-19. And, it appears that Wise's health has deteriorated in recent years; he had a kidney removed in 2018 and experienced a heart attack in 2019. Further, Wise is nearly sixty years old. And, age can create a heightened risk of falling

seriously ill from the virus.  *See id.* (noting that adults over 65 have accounted for 8 out of every 10 coronavirus-related deaths reported in the United States).

Numerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions and old age qualify as a compelling reason for compassionate release.  *See, e.g., United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (defendant is 56 years of age and suffers from multiple sclerosis and hypertension); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (defendant has hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Bess*, No. 16-cr-156, 2020 WL 1940809, at *8 (W.D.N.Y. Apr. 22, 2020) (defendant has congestive heart failure, coronary artery disease, diabetes, and hypertension); *United States v. McCarthy*, ___ F. Supp. 3d ___, 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (defendant "is 65 years old and suffers from COPD, asthma, and other lung-related ailments");  *United States v. Zukerman*, ___ F. Supp. 3d ___, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (defendant has diabetes, hypertension, and obesity); *United States v. Rodriguez*, ___ F. Supp. 3d ___, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020) (defendant has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity); *United States v. Gonzalez*, No. 18-CR-1536155, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) (defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable").

In sum, I am satisfied that, given Wise's medical conditions and age, compassionate release is warranted.

Having found that Wise's sentence should be reduced, the court must next consider the factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A).  Those factors include, 18 U.S.C. § 3553(a): (1) the nature of the offense and the defendant's characteristics; (2) the need

for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

These factors support the reduction of Wise's sentence. Although the government correctly observes that defendant pleaded guilty to participating in a drug trafficking organization, ECF 180 at 36-37, the government acknowledged at Wise's sentencing that "he was part of this organization to fuel his own addiction." ECF 174 at 10. Notably, there were no allegations that the conspiracy engaged in violence or involved firearms.

As for Wise's history and characteristics, he has multiple State convictions for selling or attempting to distribute heroin. *Id.* But, these convictions are consistent with Wise's lifelong struggle with drug addiction. *See* ECF 150, ¶¶ 70-72. Moreover, Wise has no history of violence, aside from two State convictions for battery when he was 34 and 36. For one of the battery offenses, Wise received probation before judgment. ECF 150, ¶ 30. For the other, he received a sentence of one year, with all but 90 days suspended. *Id.* ¶ 32.

Wise's criminal record is notable in another respect. Despite multiple prior convictions, the longest sentence he ever received was five months, for a violation of probation. ECF 150, ¶ 35. Therefore, he has already served a sentence in this case that is twice as long as any prior sentence.

Of particular import here, at the time of Wise's sentencing on July 23, 2019, he was treated as a Career Offender. He had two prior State convictions that qualified as felony "controlled substance offense[s]" under U.S.S.G.§ 4B1.2(b). And, at the time, Wise's instant offense— conspiracy to distribute a controlled substance under 21 U.S.C. § 846—was considered a

"controlled substance offense."   Thus, Wise's plea agreement stipulated that he was a Career

Offender.  ECF 137, ¶ 7(b).  Likewise, the PSR deemed Wise a Career Offender.  ECF 150, ¶ 16.

As a Career Offender, his Guidelines range was 151 to 188 months.

However, the following month the Fourth Circuit held in *United States v. Norman*, 935

F.3d 232 (4th Cir. 2019), that federal drug conspiracy offenses under 18 U.S.C. § 846 categorically

are not controlled substance offenses under U.S.S.G. § 4B1.2(b).  *See id.* at 237-39.  Had Wise

been sentenced just a few weeks later, he would not have qualified as a Career Offender.  Were

that the case, his final offense level would have been 17.  Coupled with a Criminal History

Category of V, Wise's Guidelines would have been 46 to 57 months.

The parties argue intensely over whether *Norman* applies retroactively to Wise.  *See* ECF

180 at 29-30; ECF 184 at 9.  This academic debate misses the point.  Certainly, I imposed a

sentence below the Guidelines range.  And, at the sentencing hearing, I stated that "in the context

of this case, the career offender designation frankly would be draconian and, therefore, that is not

influencing my sentence."  ECF 174 at 18.  But, Wise's status as a Career Offender unquestionably

affected my analysis of the § 3553(a) factors.

As the Supreme Court has explained, the Guidelines are "the starting point and the initial

benchmark" at every sentencing.  *Gall v. United States*, 552 U.S. 38, 49 (2007); *see Freeman v.

United States*, 564 U.S. 522, 529 (2011) ("The Guidelines provide a framework or starting point

. . . for the judge's exercise of discretion."); *see United States v. Mendoza-Mendoza*, 597 F.3d 212,

216 (4th Cir. 2010).  Indeed, the Court has instructed that "a district court should begin all

sentencing proceedings by correctly calculating the applicable Guidelines range."  *Gall*, 552 U.S.

at 49.  Therefore, although I departed significantly below the Guidelines in sentencing Wise, my

initial starting point was 110 to 137 months, rather than 46 to 57 months.

The fact remains that if Wise had been sentenced in August 2019, as opposed to July 2019, he likely would have received a lower sentence than the one he received, because he would not have been labeled as a Career Offender. Viewed from that perspective, Wise's incarceration — for a period of about twelve months — is sufficient to serve the goals of incapacitation, deterrence, retribution, and rehabilitation.[5]

Based on the above considerations, combined with the fact that Wise's lengthy sentence was, on some level, based on what is now a mistaken Career Offender designation, I find that the § 3553(a) factors weigh in favor of reducing Wise's sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with home detention for a period of twelve months added as a condition of supervised release.

## II.    Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 172). Wise's sentence shall be reduced to time served. The terms and conditions of supervised release to which Wise was originally sentenced will remain in place, with added conditions to include that Wise shall, for a period of twelve months, serve a period of home detention.   In addition, he will be required to comply with all directives of federal, state, and local governments related to COVID-19.

A separate Order follows.

Date:   May 20, 2020                                  _____/s/_____
                                                      Ellen Lipton Hollander
                                                      United States District Judge

---

[5] As noted, Wise received credit for pretrial detention.

16